# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA

|  |  |  |
|---|---|---|
| ANNIE GAMBLE, as Administrator of the Estate of Ernest Little, Jr., | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Case No.: 1:25-cv-00316-JB-N |
| CHUCK MILLINER, CORPORAL BALL, SERGEANT BYRD, NOAH PRICE "TROY" OLIVER, PAUL BURCH, FRANK CASSIDY, NURSE 1, NAPHCARE INC., and MOBILE COUNTY, | * * * * * * * | |
| Defendants. | * | |

## METRO JAIL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW CHUCK MILLINER, CPL. CHARLES BALL, SGT. CHRISTOPHER BYRD, NOAH PRICE "TREY" OLIVER, III (identified as Noah Price "Trey Oliver) Chief Deputy FRANK CASSADY (incorrectly identified as Frank Cassidy) and Mobile County Sheriff, PAUL BURCH, collectively referred to as the Metro Jail Defendants and files this their motion to dismiss Plaintiff Annie Gamble's (hereinafter Gamble) second amended complaint (Doc. 34), pursuant to

Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, and as grounds for their motion set forth as follows:

1.    This lawsuit arises out of the death of Ernest Little, Jr. (Little), on June 26, 2023 while in the custody of the Mobile County Metro Jail.

2.    Annie Gamble (Gamble), who was the mother of Little filed suit on June 26, 2025 in the Circuit Court of Mobile County, AL. Gamble claims she has been appointed the personal representative of Little's estate, however a search of Probate Court records does not reveal any estate has been opened in the name of Little and that no letters of representation have been issued to Gamble.

3.    The Defendants properly removed the lawsuit to Federal District Court on July 31, 2025. (See Doc. 1, Joint Notice of Removal.)

4.    The Metro Jail Defendants filed their motion to dismiss the complaint on August 7, 2025. (See Doc. 4)

5.    Instead of filing a response to their motion Gamble filed an Amended Complaint. (Doc. 10)

6.    The Metro Jail Defendants filed another motion to dismiss the Amended Complaint. (Doc. 11)

7.    After a hearing, this court dismissed the plaintiff's first amended complaint without prejudice and subject to leave for the Gamble to file an Amended Complaint. (Doc. 33)

8.     Gamble filed a Second Amended Complaint on 12/04/25. (Doc 34)

9.     Paul Burch (Burch), is the current Sheriff of Mobile County, he was elected in November 2022 and sworn in as Sheriff in January 2023.

10.     Sheriff Burch appointed Frank Cassady as Chief Deputy after he was installed as Sheriff, therefore Cassady was only over the Metro Jail after January 2023.

11.     Warden Trey Oliver resigned prior to Sheriff Burch being installed as Sheriff and therefore had been absent from the jail's administration prior to Little's death. See Carwie v Mobile County Case 1:23-cv-00276-C Doc#37-1 PageID#243, Declaration of Noah Price "Trey" Oliver.

**LEGAL ARGUMENT**

Gamble's Second Amended Complaint fails to address the deficiencies in her previous complaints and fails to rebut the arguments presented by the Metro Jail Defendants in their prior motions to dismiss as to why the claims should be dismissed against them. Further, allowing the litigation to continue when Gamble is not the proper party, lacks standing and capacity to purse claims on behalf of Little's estate would be a waste of this court's judicial resources.

Counts One and Two of the newest complaint are a restatement of Gamble's original Count Four – a Monell claim and a supervisory claim alleging Burch,

Cassady and Oliver new that additional training was needed, failed to provide that training and failed to properly supervise the correctional officers.

Count Three of the second amended complaint is a reiteration of the prior complaint's Count Three, alleging the correctional staff, Milliner, Byrd and Ball, were deliberately indifferent to a serious medical need of Little. Count Five of the Second Amended complaint restates the previous count Two but adds Cassady and Oliver to the Negligent training claim. The Second Amendment's Count Six restates the prior Count One and the last two counts reassert the State and Federal Civil Conspiracy claims contained in the last complaint. There is nothing new added to counter the grounds asserted by the Metro Jail Defendants. Burch and Cassady have immunity for state claims. Oliver, Milliner, Bryd and Ball have similar immunity, derived from state statute instead of the Alabama Constitution. Burch, Cassady and Oliver were not on notice of any deficiencies in the training or performance of the correctional staff. None of the correctional officers were on notice of any medical condition of Little.

Gamble's reliance on letters from the Department of Justice to former Sheriffs of Mobile County does not provide the necessary notice to the supervisory officials. Burch and Cassady were in office for six months prior to Little's death. Oliver had been gone from his position for over six months prior to Little's death.

The letters from the DOJ had been sent years before Little's death and did not pertain to the alleged problems at issue in this case.

In many cases Gamble's statements contradict themselves. She claims that the staff were indifferent to Little's medical condition while stating that Little had just come from the medical clinic.

**Count One – 42 U.S.C. § 1983 Policy or Custom of Deliberate Indifference to Serious Medical Needs (Monell) Against Defendants Sheriff Burch, Chief Deputy Cassidy (sic), and Warden Oliver**

A Monell claim is not one brought against an individual, but instead is one against a governmental entity. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S. Ct. 2018 (1978).  See Wilcox v. Andalusia City Sch. Bd. of Educ., 660 F. Supp. 3d 1167, 1184 (M.D. Ala. 2023) (finding that a *Monell* claim is not cognizable against an Official in their individual capacity). Cassady and Oliver are sued only in their individual capacity therefore this claim should be dismissed against them. To the extent Sheriff Burch is sued in his individual capacity that claim is due to be dismissed.

To the extent Gamble is attempting to sue Sheriff Burch in his official capacity, that too is due to be dismissed pursuant to Eleventh Amendment immunity.

State officials acting in official capacities are immune from suits brought under Section 1983 under the Eleventh Amendment, which "protects a State from being sued in federal court without the State's consent." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003). "It is well established in this Circuit that Alabama sheriffs and their deputies are state officials and are absolutely immune from suit as an officer of the state under the Eleventh Amendment." Melton v. Abston, 841 F.3d 1207, 1234 (11th Cir. 2016). The State of Alabama has not waived its Eleventh Amendment immunity and Congress has not abrogated Eleventh Amendment immunity in Section 1983 cases. *See* Brown v. Fla. Dep't of Revenue Off. of Child Support Enf't., 697 F. App'x 692, 693 (5th Cir. 2017) (citation omitted); Carr v. City of Florence, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990) (quoting Article 1, Section 14 of the Alabama Constitution of 1901, "the State of Alabama shall never be made a defendant in any court of law or equity"). Green v. McDonald, No. 2:24-00321-KD-N, 2025 U.S. Dist. LEXIS 21596, at *5-6 (S.D. Ala. Feb. 6, 2025)

**Count Two – 42 U.S.C. § 1983 Supervisory Liability - Deliberate Indifference to Serious Medical Needs Against Defendants Burch, Cassidy (sic), and Oliver**

In a Sec. 1983 context, supervisory liability is difficult to show, "the standard by which a supervisor is held liable in [his or her] individual capacity for the actions of a subordinate is extremely rigorous." Christmas v. Harris Cnty., 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting Braddy v. Fla. Dep't of Lab. & Emp't. *Sec.*, 133 F.3d 797, 802 (11th Cir. 1998)). It is well established in this Circuit that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* at 1360 (citing Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). Myrick v. Fulton Cty., 69 F.4th 1277, 1297 (11th Cir. 2023)

Gamble does not allege any personal participation by Sheriff Burch, Warden Oliver, or Chief Deputy Cassady, so she must show a causal connection between their actions and the death of Little. Gamble can meet that extremely rigorous challenge in several ways. A causal connection may be established when: (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom

or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so. Mathews v. Crosby, 480 F.3d 1265, 1270 (11th Cir. 2007) Id. at 1298.

There are no allegations that would fit into the second or third categories, therefore Gamble must make sufficient allegations to show widespread abuse. With respect to widespread abuse, "[t]he deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Christmas v Harris Cnty., 51 F.4th 1348, 1355 (11th Cir. 2022) (quoting Keith v. DeKalb Cnty., 749 F.3d 1034, 1048 (11th Cir.2014) Myrick v. Fulton Cty., 69 F.4th 1277, 1298 (11th Cir. 2023)

Incidents that are remote in time and factually distinguishable from the alleged constitutional violation will not support a claim of widespread abuse. See Lamego v. Mascara, 2021 U.S. Dist. LEXIS 29939 (S.D. Fla. Jan. 7, 2021); Whittier v. City of Sunrise, 395 F. App'x 648, 650 (11th Cir. 2010); Wakefield v. City of Pembroke Pines, 269 F. App'x 936, 940 (11th Cir. 2008) Conclusory allegations are insufficient. In Hays v. Curry, the court found plaintiff did not establish widespread abuse because he failed to allege "specific facts, dates, frequency, or number of reports, complaints, and/or lawsuits" of prior occurrences. Hays v. Curry, No. 2:16-cv-00384-RDP, 2016 U.S. Dist. LEXIS 149447 *11 (N.D. Ala. Oct. 28, 2016)

A "plaintiff can only allege the existence of a policy or custom by 'point[ing] to multiple incidents or multiple reports of prior misconduct by a particular employee.'" *Id.* "Normally random acts or isolated incidents are insufficient to establish a custom or policy." Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986). In Myrick v. Fulton Cnty., 69 F.4th 1277, 1299 (11th Cir. 2023) ("Demonstrating a policy or custom requires showing a persistent and wide-spread practice.") (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1332 (11th Cir. 2007) (quoting *Depew*, 787 F.2d at 1499)).  Wiggins v. Ward, No. 1:23-00226-JB-N, 2025 U.S. Dist. LEXIS 60248, at *18 (S.D. Ala. Mar. 31, 2025)

Setting aside for a moment the fact that Sheriff Burch had only been the sheriff of Mobile County for six months at the time of Little's death, and that Warden Oliver had not been the Warden for over six months prior to Little's death, the only allegations made by Gamble arise from an investigation made 20 years prior, when there was a different sheriff in charge of the Jail. Gamble then cites a letter purportedly written in 2009 when still another person held the office of Sheriff. [Jack Tillman was Sheriff of Mobile County in 2001 and Sam Cochran was Sheriff in 2009] Gamble continues by stating that 9 inmates had died "at the Jail" and that 5 other inmates died in the six-month following Little's death. Gamble has failed to set forth the cause of those inmates' death or whether any of the deaths had been caused by anything similar to Little's death. Her complaint lacks facts, dates, causes

of death and any other information that would lead to a belief there was widespread abuses.

## Count Three – 42 U.S.C. § 1983 Deliberate Indifference to Serious Medical Needs Against Defendants Sgt. Byrd, Corporal Ball, and Milliner

Gamble has failed to establish a violation of Little's constitutional rights by Milliner, Ball or Byrd. As to Milliner, Gamble states that Milliner should have been on notice of a serious medical condition because Little visited the nurse. The is no showing that Milliner was aware of Little's medical condition. Even so, the only medical condition stated by Gamble was that Little had high blood pressure. There is no indication that Milliner would have been aware of Little's purported high blood pressure, and no evidence he knew or should have known Little had allegedly been given the wrong medication. Gamble alleges that Little had recently returned from a visit to the nurse and therefore it was apparent he was not being denied medical care.

As to Ball and Byrd, as previously stated, there is no showing that it was their duty to call an ambulance or that a 15-minute delay was not reasonable under the circumstances at the time.

Each of the correctional officers is entitled to qualified immunity. The Metro Jail Defendants have asserted qualified immunity in response to the claims brought under Federal law. To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority. Gonzalez v. Reno, 325 F.3d at 1234 (citing Vinyard, 311 F.3d at 1346). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his [or her] conduct was unlawful in the situation he [or she] confronted [,]" Cottone v. Jenne, 326 F.3d 1352,1359 (11th Cir. 2003) In making this inquiry, "the salient question ... is whether the state of the law ... gave [a defendant] fair warning that [his or her] alleged [conduct] was unconstitutional[,]" id. (quoting Hope, 536 U.S. at 731); Vaughan v. Cox, 316 F.3d 1210, 1212 (11th Cir. 2003) (quoting, in turn, Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)) (internal quotation marks omitted)); Chesser v. Sparks, 248 F.3d 1117, 1122 (11th Cir. 2001) (citing, Lassiter v. Ala. A & M Univ., Bd. of Trs., 28 F.3d 1146, 1149 (11th Cir.1994) (*en banc*))); *cf.* Dukes v. Miami—Dade Cty., 232 Fed.Appx. 907, 911 (11th Cir. May 10, 2007) (*per curiam*)("[O]nly Supreme Court cases, Eleventh Circuit caselaw, and state] Supreme Court caselaw can clearly establish law in this circuit.")(quoting Thomas ex rel. Thomas v. Roberts, 323 F.3d 950, 955 (11th Cir. 2003)).

The Metro Jail Defendants were all acting within their discretionary authority when they maintained, supervised and worked in the Metro Jail. In Alabama the sheriff has the legal custody and charge of the jail in his or her county and all prisoners committed thereto, except in cases otherwise provided by law. He may employ persons to carry out his or her duty to operate the jail and supervise the inmates housed therein. Ala. Code § 14-6-1. Once the Defendants establish they were acting within their discretionary authority it becomes incumbent on Gamble to show both that they violated Little's constitutional rights as a pre-trial detainee and that the rights so violated were clearly established. Gamble has failed show that Little's rights were clearly violated by these defendants. Gamble's Amended Complaint does not contain sufficient factual allegations to establish that Little's death was proximately caused by any of these Defendants.

At this stage, because the defendants are asserting their right to the affirmative defense of qualified immunity through a motion to dismiss, qualified immunity attaches only if the "complaint fails to allege a violation of a clearly established constitutional right." Santamorena v. Georgia Military College, 147 F.3d 1337, 1340 (11th Cir. 1998)(quoting Williams v. Alabama State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997)); accord Dukes, 232 Fed.Appx. at 911 ("If a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation

of a clearly established constitutional or statutory right.")(quoting Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007)).

And when, as here, a defendant asserts that a constitutional claim should be dismissed both because he or she is entitled to qualified immunity and because the plaintiff has failed to state a claim, the Court may collapse those two theories and consider them together at this stage. Cf. Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994) (A "finding of deliberate indifference necessarily precludes a finding of qualified immunity."). Caldwell v. Fort Lauderdale Airport Task Force, No. 15-60050-Civ-COHN, 2017 U.S. Dist. LEXIS 172462, at *6-7 (S.D. Fla. Oct. 17, 2017)

"Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir. 1998)). "It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint 'fails to allege the violation of a clearly established constitutional right.'" Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001)); *see also* Williams v. Board of Regents of Univ. Sys. Of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007) ("If a defendant asserts a qualified

immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right.") (citing Williams v. Ala. State Univ., 102 F.3d 1179, 1182 (11th Cir. 1997) (per curiam)). "An official asserting the affirmative defense of qualified immunity must initially establish that he [or she] was acting within his [or her] discretionary authority." Skop v. City of Atlanta, Ga., 485 F.3d 1130, 1136 (11th Cir. 2007) Est. of Brannon v. City of Wetumpka, No. 2:24-cv-00005-RAH, 2024 U.S. Dist. LEXIS 160476, at *6-7 (M.D. Ala. Sep. 6, 2024)

Gamble has failed to put forth allegations showing that the Metro Jail Defendants violated Littles constitutional rights or that they were on notice that their actions could lead to a constitutional violation.

**Count Five – Negligent Training and Supervision Against Sheriff Burch.**

This count is based on a state tort claim for negligent training and supervision. Under state law, Sheriff Burch is absolutely immune. The Alabama Supreme Court has established that Article I, Section 14 of the Alabama Constitution immunizes sheriffs in their official capacity from suits for money damages under state law. See Karrick v. Johnson, 659 So.2d 77, 79 (Ala. 1995); accord Alexander v. Hatfield, 652 So.2d 1142, 1143 (Ala. 1994); Amerson, 519 So.2d at 445-46. That

immunity also applies when a sheriff is sued under state law in his individual capacity "whenever the acts that are the basis of the alleged liability were performed within the course and scope of the officer's employment." Ex parte Davis, 930 So.2d 497, 500-01 (Ala. 2005); *see also* McMillian v. Johnson, 101 F.3d 1363, 1364-65 (11th Cir. 1996) (denying *en banc* review and holding that "under Alabama law [and, specifically, Article I, Section 14 of the state constitution], a claim [based on intentional torts] against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity").

**Count Six – Wrongful Death (Ala. Code § 6-5-410)**

In a wrongful-death action predicated on theories of negligence and wantonness, a plaintiff must establish that the defendant's tortious conduct proximately caused the decedent's death. See Martin v. Arnold, 643 So. 2d 564, 567 (Ala. 1994) ("Proximate cause is an essential element of both negligence claims and wantonness claims."); D.A.C. ex rel. D.D. v. Thrasher, 655 So. 2d 959, 961 (Ala. 1995) ("It is well settled in this state that damages claims cannot be presented to a jury in the absence of sufficient evidence of an unbroken sequence of cause and effect, i.e., evidence that the act complained of was the proximate cause of the injury." (citing Alabama Power Co. v. Bryant, 226 Ala. 251, 146 So. 602 (1933)). The Alabama Supreme Court, moreover, has defined proximate cause as "an act or

omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." Thetford v. City of Clanton, 605 So. 2d 835, 840 (Ala. 1992). Hughes v. Marley, 390 So. 3d 545, 549 (Ala. 2023)

Gamble asserts that Ball and Byrd delayed calling for an ambulance but she has not given any details or factual assertions about what occurred between finding Little unresponsive and an ambulance being called aside from her allegation that Little was administered Narcan at some point after he was discovered unresponsive. (Amended Compliant, ¶ 51, PageID# 221. There are no assertions that it was the duty of Ball or Byrd to call an ambulance. There are no assertions that a 15-minute delay was or wasn't reasonable. There is not even an established cause of death. There is a statement that Little did not receive his blood pressure mediation shortly prior to his death, but no factual assertion that the failure to receive on blood pressure medication was the cause of death.

Gamble makes a claim that Milliner should have known Little could be in a condition requiring medical attention, based only on an apparent knowledge of Milliner that Little visited the medical staff. That is insufficient to place Milliner on notice, further there is no allegations that Milliner knew of the condition, whether it was serious and whether Little's condition was deteriorating. Gamble makes vague, conclusory allegations concerning Oliver, Cassady and Burch related to

understaffing, underfunding and lack of oversight. There are no facts to support these conclusions besides a letter from 2009 and no showing how those issues were the proximate cause of Little's death.

In addition to Gamble's failure to give any basis to support a claim against them, the Metro Jail Defendants are entitled to immunity, sovereign and/or statutory. A sheriff is absolutely immune from a respondeat superior claim. *See* White v. Birchfield, 582 So.2d 1085, 1088 (Ala. 1990) (holding that a "sheriff cannot be held liable under the theory of respondeat superior for the actions of his [employees]" because "[a] claim of respondeat superior does not fit into any of the[] special exceptions to the absolute immunity afforded to state officials," and an action against a sheriff in "his official position as 'employer' . . . is, in essence, a claim against the state"). Holmes v. Hale, No. 2:15-cv-01383-RDP, 2016 U.S. Dist. LEXIS 7000, at *12-14 (N.D. Ala. Jan. 21, 2016). As stated above, Chief Deputy Cassady is also entitled to sovereign immunity on the state wrongful death claim since he is the alter ego of Sheriff Burch.

Former Warden Oliver, as well as the corrections officers, Milliner, Ball and Byrd are entitled to statutory immunity set forth in Ala. Code. §14-6-1 which grants employees of the sheriff's office the same immunities that are afforded to the sheriff, including the broad State immunity, provided their actions are done in compliance with the law. Gamble attempts to hold Oliver responsible based on understaffing,

and underfunding, something that Oliver has no control over and even if he did there is nothing to show this was due to negligence or wantonness or that the understaffing or underfunding was the proximate cause of Little's death. There are no factual allegations showing that a 15-minute delay was unreasonable let alone negligent or wanton. In the absence of an underlying viable constitutional claim or the potential violation of a civil or criminal statue, former Warden Oliver as well as the Corrections officer are entitled to the statutory immunity set out in Ala. Code §14-6-1. See Young v. Myhrer, 243 F. Supp. 3d 1243, 1261 (N.D. Ala. 2017).

**Count Seven – Civil Conspiracy (Alabama Common Law) Against Burch and Cassidy(sic)**

The elements of civil conspiracy in Alabama are: (1) concerted action by two or more persons (2) to achieve an unlawful purpose or a lawful purpose by unlawful means." Luck v. Primus Auto. Fin. Servs. Inc. 763 So.2d 243, 247 (Ala. 2000) Gamble is attempting to manufacture a conspiracy from being told by an attorney for the Sheriff's office that they would provide medical records but failed to provide them. There are no allegations that the Sheriff or any of his staff did not respond to a proper request, whether through subpoena or an Open Records Act request for any medical records or other information related to Little's death. There are no allegations that Sheriff Burch or his staff committed any unlawful act or used

unlawful means. There are lawful means for obtaining government records or medical records, none of which were apparently pursued by Gamble.

Further, Burch and Cassady are each entitled to sovereign immunity for monetary claims pursued against them under Alabama tort law.

**Count VIII – Civil Conspiracy (42 U.S.C. § 1983) Against Burch and Cassidy (sic)**

For the same reasons Burch and Cassady are not liable for civil conspiracy under Alabama law, they are not liable under Federal law. There are no allegations that obstructed a proper request for information, only that they didn't follow through on assurances they would provide that information. Such failure, if in fact it did occur, does not amount to a violation of a constitutional right. Further, Sheriff Burch and Chief Deputy Cassady are entitled to qualified immunity because Gamble has failed to allege a violation of Little's constitutional rights. Whatever rights may or may not have been violated, they were certainly not Little's, who had predeceased the supposed conspiracy.

**Additional Grounds for Dismissal.**

Upon information and belief, the plaintiff, Annie Gamble, has not been appointed by the Probate Court of Mobile County is therefore not the personal

representative of the estate of Ernest Little, Jr. see <u>Hodge v. Mun. of Dothan</u>, No. 1:23-cv-222-RAH-CWB, 2024 U.S. Dist. LEXIS 158567 (M.D. Ala. Sep. 4, 2024). In Hodge, the plaintiff purported to be the Administrator of the decedent. In the face of motions to dismiss the plaintiff argued that she had sought to be appointed as the personal representative of the estate as was nearly certain to be successful at the time of filing the initial complaint. Here it noted that Gamble filed her complaint, originally in state court, one day prior to the expiration of the statute of limitations and that the statute had expired prior to the removal of this case to federal court, therefore all of her state law claims are barred since those claims were a nullity prior to removal. See <u>Northstar Anesthesia of Ala., LLC v. Noble,</u> 215 So. 3d 1044, 1050 (Ala. 2016). <u>Washam-Buford v. City of Prichard</u>, No. 1:21-cv-199-TFM-MU, 2023 U.S. Dist. LEXIS 80024 (S.D. Ala. May 8, 2023).

**Conclusion**

For the reasons set forth above, the Metro Jail Defendants respectfully request that Gamble's claims against them in her Second Amended Complaint be dismissed.

Respectfully submitted,

*/s/K. Paul Carbo, Jr.*
K. PAUL CARBO (CARBK8014)
Attorney for Metro Jail Defendants
The Atchison Firm, P.C.
411 Azalea Road
Mobile, Alabama 36609
Telephone: (251) 665-7200
Facsimile: (251) 665-7250
Email: paul.cabo@atchisonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify on this the 18th day of December 2025 that I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will notify all counsel of record.

*/s/K. Paul Carbo, Jr.*